UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

FIDENCIO M. DIAZ,                                    )
                                                     )
                Plaintiff,                           )
                                                     )
v.                                                   )   CIVIL ACTION NO.
                                                     )   5:08-CV-220-BG
                                                     )   ECF
MICHAEL J. ASTRUE,                                   )
Commissioner of Social Security,                     )
                                                     )
                Defendant.                           )

## REPORT AND RECOMMENDATION

Plaintiff Fidencio M. Diaz brings this suit seeking judicial review of a decision of the

Commissioner of Social Security in which his applications for Disability Insurance Benefits and

Supplemental Security Income were denied.  The United States District Judge transferred this case

to the United States Magistrate Judge.  Diaz did not consent to the jurisdiction of the court.

Pursuant to the order of transfer, the undersigned files this Report and Recommendation.

After reviewing the arguments of the parties, the administrative record, and the applicable law, this

court recommends that the Commissioner's decision be affirmed and Diaz' case be dismissed.

**I.      Facts**

Diaz previously worked in auto body repair and as a car washer.  (Tr. 68.)  He applied for

benefits at the age of thirty-five alleging that he became disabled on July 19, 2004, the day on which

he suffered a stress fracture to his ankle during a workplace accident.  (Tr. 99, 305, 440.)  According

to the medical records, Diaz underwent physical therapy and treatment with special footwear.

(Tr. 113-84, 303.)  An MRI in November 2004 demonstrated that the fracture was healed, and the

results of a functional capacity evaluation Diaz underwent on January 20, 2005, indicate that he was

capable of performing work at the light to medium exertional level.  (Tr. 105.)

One month later Diaz complained at an emergency room of a two-week history of headache and dizziness.  (Tr. 185-88.)  A CT scan showed a benign tumor, and Diaz underwent a craniotomy and excision of the tumor on  March 1, 2005.  (Tr. 185, 210-11.)   After the surgery Diaz demonstrated "moderate"  impairment in communication in areas of speech, reading, and cognition, and underwent speech therapy.  (Tr. 227, 230, 287, 295.)  On June 9, 2005, it was determined that Diaz would discontinue therapy because he was no longer able to afford it.  (Tr. 287-88).  Because of his limitations, Diaz' neurologist, Ross R. Sedler, M.D., noted in May 2005 that, depending on neurological recovery, Diaz would not be able to work for approximately four more months. (Tr. 309.)  However, on August 24, 2005, Dr. Sedler noted that Diaz could "return to all usual activities without restriction."  (Tr. 307.)  Dr. Sedler indicated that Diaz was taking anti-seizure medication at that time and that he discussed with Diaz and his wife the pros and cons of discontinuing the medication and that Diaz elected to discontinue the medication.  *Id.*  On November 21, 2005, Diaz reported that he had experienced a seizure, and medication was restarted. (Tr. 327-29.)  On April 1, 2006, Diaz again reported experiencing a seizure.  (Tr. 259-61.)  At that time it was determined that the dosage of Diaz' anti-seizure medication was too low for his body weight, and the dosage was adjusted.  (Tr. 259-61, 266.)  There is no medical evidence of Diaz experiencing seizures after that time.  *See* Tr. 391.

The Administrative Law Judge (ALJ) held a hearing on January 23, 2007, and issued a decision on March 22, 2007.  (Tr. 9-20; *See* Tr. 4.)  The ALJ determined that Diaz suffered from severe impairments, including a history of brain tumor and removal of the tumor, a history of seizure disorder, which was controlled, and depression, anxiety, cognitive disorder, and nicotine abuse. (Tr. 13.)   The ALJ further determined that Diaz' impairments did not meet a listing in the

2

Commissioner's regulations and that his impairments did not preclude him from performing all

work. (Tr. 15-16.) He determined that despite Diaz' impairments, his Residual Functional Capacity

(RFC)[1] enabled him to perform light work activity that did not require climbing, working around

heights, driving on the job, or work with dangerous machinery and that was limited to jobs that are

simple and require no interaction with the general public.  (Tr. 17.)  Based on testimony from a

vocational expert, the ALJ determined that Diaz was incapable of performing his past work but that

there were a significant number of jobs in the national economy that he could perform and that he

was therefore not disabled.  (Tr. 18-20.)  The Appeals Council denied Diaz' request for review.

(Tr. 4-6.)

## II.      Discussion

Diaz claims the ALJ failed to acknowledge his cognitive impairments and the combination

of his impairments and that the ALJ failed to incorporate his impairments into the RFC

determination and into the hypothetical question posed to the vocational expert.  Diaz also argues

that the ALJ failed to consider whether his impairments met the criteria of Listing 12.02, the listing

for organic mental disorders.

The court's review of a decision of the Commissioner of Social Security is limited to

determining whether the decision is supported by substantial evidence and whether proper legal

standards were used to evaluate the evidence.  *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir.

2002) (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)).  In this case, the ALJ's

determination was reached through the application of proper legal standards and is supported by

---

[1]

Residual functional capacity is the most the claimant can do in a work setting despite his limitations. 20 C.F.R.
§§ 404.1545(a)(1), 416.945(a)(1) (2008).

substantial evidence.              Contrary to Diaz' arguments, the ALJ considered the combination of

Diaz' impairments and incorporated the limitations from the impairments into the RFC

determination, and the ALJ's RFC determination is supported by substantial evidence.  On August

24, 2005, the date on which Dr. Sedler, Diaz' treating physician, noted that he could "return to all

usual activities without restriction," the physician noted that Diaz had "no problems at all in

conversational speech"; that he was alert, bright, oriented, and cooperative; and that he exhibited

no sensory loss and no sensory or motor inattention.  (Tr. 307.)  Although Diaz points to

examination notes from consultative examiner and neuropsychologist Addison E. Gradel, Ed.D., as

evidence that he suffered mental and cognitive limitations, nothing in Dr. Gradel's examination

records would preclude Diaz from performing simple work.  According to Dr. Gradel, Diaz suffered

from memory loss, difficulty writing, and depression.  (Tr. 339.)  Dr. Gradel diagnosed Diaz with

cognitive disorder and borderline intellectual functioning, but he also reported that results from a

mental status examination were within normal limits.  (Tr. 339-42.)  He reported that Diaz' speech

production was within normal limits with normal grammar and syntax, that his articulation was

within normal limits, that he was oriented to person, time, and place, that he was congenial and

exhibited a pleasant mood and appropriate effect, and that he was able to sustain attention to task

for two hours.  (Tr. 339.)  In sum, the deficits Dr. Gradel identified in Diaz' cognitive and mental

functioning were characterized as "mild."  (Tr. 340-42.)  There is no evidence that  Diaz suffers

from physical impairments that would limit his ability to perform the physical requirements of light

work activity.  (*See* Tr. 63, 65, 297, 362-68, 452, 456-57.)

        The ALJ's determination that Diaz could perform limited light work is supported by the

foregoing evidence.  Although Diaz suffers from limitations in cognitive and mental abilities, the

ALJ incorporated the limitations into the RFC determination.  The ALJ's determination that Diaz could not perform work that requires climbing, working around heights, driving on the job, or work with dangerous machinery accommodates Diaz' history of seizure disorder.   The ALJ's determination that Diaz was limited to jobs that are simple and require no interaction with the general public accommodates his mental limitations.  Because the ALJ reasonably incorporated all the limitations supported by the evidence into the hypothetical posed to the vocational expert, it survives judicial review.  *See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994) (the ALJ must reasonably incorporate all the claimant's disabilities into the hypothetical question). Diaz' first argument does not required remand.

Likewise, remand is not required to address Diaz' claim that the ALJ failed to analyze whether his impairments met the criteria of Listing 12.02,  the listing for organic mental disorders. The claimant bears the burden of proof at step three of the sequential analysis and must produce findings that support each of the criteria of the listing at issue. *See Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)).  Diaz has not produced findings that support each of the criteria of Listing 12.02, and the ALJ's determination that Diaz' impairments do not meet the criteria of a listing is supported by substantial evidence.  *See* Tr. 85, 307, 338-42, 386.  Diaz' argument is therefore without merit.  *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (remand not required unless ALJ's failure to discuss specific listing prejudiced the claimant).

## III.    <u>Recommendation</u>

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the Commissioner's decision and dismiss Diaz' complaint.

**IV.**     **Right to Object**

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections

to the Report and Recommendation within ten days after being served with a copy of this document.

The filing of objections is necessary to obtain de novo review by the United States District Court.

A party's failure to file written objections within ten days shall bar such a party, except upon

grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted

by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en

banc).

Dated:        June 19, 2009.

NANCY M. KOENIG
United States Magistrate Judge